# UNITED STATES DISTICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN MICHIGAN

LISA AIKEN,

      Plaintiff,

                                    Case:

v.

                                    Hon:

GREAT CLIPS, INC.,

      Defendants,

---

Batey Law Firm, PLLC
SCOTT P. BATEY (P54711)
Attorney for Plaintiff
30200 Telegraph Road, Suite 400
Bingham Farms, MI 48025
Phone: (248) 540-6800
Fax: (248) 940-5848
sbatey@bateylaw.com

---

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

    NOW COMES, Plaintiff Lisa Aiken, by and through her attorneys Scott P. Batey and the Batey Law Firm, PLLC and for her Complaint against Defendants, states as follows:

    1.    Plaintiff, Lisa Aiken (hereinafter "Plaintiff"), is a resident of the City of New Baltimore, County of Macomb, and State of Michigan.

2.     Defendant, Great Clips, Inc. is a foreign profit company, whose resident agent is National Registered Agents, Inc., and whose registered address is 40600 Ann Arbor Rd E Ste 201, Plymouth, MI 48170

3.     Venue is proper in the District Court for the Eastern District of Michigan pursuant to 28 USC §1391(b) and (c).

4.     This Honorable Court has subject matter jurisdiction under 28 USC § 1331, and pendent jurisdiction over Plaintiff's state law claims under 28 USC §1367.

5.     The amount in controversy exceeds $75,000.00 and is otherwise within the Jurisdiction of this Court.

6.     Plaintiff brings this action for damages arising out of the acts and/or omissions of Defendant constituting unlawful disability discrimination in violation of the American with Disabilities Act of 1990 ("ADA"), and the Michigan Persons with Disabilities Civil Rights Act, MCLA §37.1101, *et seq*. ("PWDCRA) and which resulted in emotional and economic damages to Plaintiff. age discrimination

## GENERAL ALLEGATIONS

7.     Plaintiff incorporates by reference paragraphs 1 through 6 of the Complaint as though fully set forth herein.

8.     Plaintiff was employed by Defendant at its Rochester Hills, Michigan location.

2

9.     On August 14, 2024, Plaintiff sustained a work-related injury resulting in a tarsal dome defect and additional ankle injuries,

10.     Plaintiff's condition substantially limited major life activities including, walking, standing, and prolonged sitting, and constituted a disability under Disabilities Act ("ADA") and the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA").

11.     Following her injury, Plaintiff was placed on medical leave.

12.     Defendant's worker's compensation carrier sent Plaintiff to an Independent Medical Examination ("IME") with a doctor of their choice.

13.     On August 1, 2025, Plaintiff was medically cleared to return to work with restrictions and reasonable accommodations, including ten-minute breaks every hour, work as tolerated, and a limitation of four hours per day and twenty hours per week.

14.     Plaintiff's treating providers and subsequent clarification of the IME supported these restrictions.

15.     Plaintiff initially received information from her worker's compensation adjuster that she was to return to work immediately.

16.     Plaintiff contacted Defendant, who stated that they have not yet received the IME information and would speak with the adjuster.

3

17.     Thereafter, Plaintiff was directed to Human Resources, and the Defendant ceased responding to Plaintiff's messages and inquiries.

18.     Defendant's worker's compensation carrier sent Defendant an IME that misread Plaintiff's MRI and concluded she had no restrictions.

19.     During Plaintiff's first discussions with Human Resources, Human Resources asserted that Plaintiff disagreed with the IME because Plaintiff reported ongoing pain, including burning sensations in her feet caused by prolonged standing.

20.     Plaintiff had not yet received the clarification re

21.     The IME doctor reviewed the MRI again, and agreed with Plaintiff's restrictions and issued an amended report which conveyed those findings.

22.     The amended IME report and was provided to Defendant and Defendant's Human Resources department forward the amended IME report to Plaintiff.

23.     The amended report confirmed Plaintiff's need for accommodations.

24.     Plaintiff had previously been accommodated by Defendant for the same injury without requiring an interactive process.

25.     At all times relevant, Plaintiff was able to perform the essential functions of her job, with or without reasonable accommodation.

26.     Plaintiff repeatedly asked Defendant whether she would be returned to work and placed on the schedule.

27.     Defendant responded by text saying "no," and plaintiff reasonably believed she was being terminated in retaliation.

28.     After Plaintiff filed for unemployment benefits, Defendant stated that Plaintiff had not been terminated but still refused to return her to work and accommodate her restrictions.

29.     Defendant refused to answer Plaintiff's questions concerning her position, accommodations, work schedule, breaks and return to work status.

30.     Defendant intentionally delayed the accommodation process.

31.     Rather than allowing Plaintiff to return to work upon her medical release, Defendant delayed Plaintiff's return until approximately August 30, 2025, despite Plaintiff's ability to perform the essential functions of her job with reasonable accommodations.

32.     After Plaintiff returned to work, Defendant denied Plaintiff's requested reasonable accommodations and subjected Plaintiff to a hostile work environment because of her disability and because she had complained about discrimination and harassment.

33.     Plaintiff complained about verbal abuse and discriminatory treatment by two coworkers.

34.     Shortly after making those complaints, Plaintiff sustained an additional ankle injury and wore a walking boot.

35. When Plaintiff requested that a coworker be careful because of Plaintiff's injuries, the coworker yelled at Plaintiff in front of the entire store, blamed Plaintiff for bumping into her, and publicly humiliated Plaintiff.

36. Plaintiff reported the incident and stated that such behavior was inappropriate.

37. On September 6, 2025, one coworker aggressively approached Plaintiff, screamed profanities, repeatedly told Plaintiff to "shut the fuck up," and refused to move away when Plaintiff requested space, and pointed her finger approximately one to two inches from Plaintiff's face.

38. Plaintiff believed the coworker's conduct was threatening and intimidating.

39. Plaintiff notified the Defendant about the incident. The defendant was dismissive and suggested that the conduct was merely a misunderstanding.

40. Plaintiff thereafter prepared and submitted a written incident report in an effort to ensure that her concerns would be addressed.

41. Defendant representative said it would investigate Plaintiffs complaints, along with Human Resources.

42. Instead, Plaintiff attended meetings during which accused Plaintiff of "playing games," and minimized Plaintiffs complaints again.

6

43. During one meeting, Defendant concluded that Plaintiff's discrimination complaint was not directed at Plaintiff but instead involving a customer.

44. Plaintiff was further accused by Defendant of verbally abusing the Defendant after Plaintiff merely sought clarification concerning break policies, which Plaintiff believes was done to retaliate her complaints against her coworkers.

45. Meetings concerning Plaintiff's complaints were repeatedly diverted to discussions about break policies rather than addressing Plaintiff's reports or discrimination and harassment.  Defendant focused on criticizing Plaintiff instead of investigating the conduct complained of.

46. Throughout the relevant period, Plaintiff exchanged approximately 253 text messages and 56 emails concerning her work status, accommodations, break schedule, position, and return to work.

47. Plaintiff was mocked, ridiculed, verbally abused, intimidated, and subjected to retaliatory treatment after requesting accommodations and reporting harassment and discrimination.

48. Defendant failed to take corrective action and instead escalated its conduct toward Plaintiff.

49. As a result of Defendants actions, Plaintiff suffered emotional distress, humiliation, anxiety, loss of income, damage to her career, and other compensatory damages.

50. On or about February 24, 2026, Plaintiff filed a Charge of Discrimination against Defendants with the EEOC for ADA violations and retaliation, Case Number 471-2026-03270

51. On July 13, 2026, Plaintiff received notice that a Right to Sue letter from the Equal Employment Opportunity Commission was being issued.

## COUNT I
## VIOLATIONS OF THE ADA AND PWDCRA

52. Plaintiff incorporates by reference paragraphs 1 through 51 of the Complaint as though fully set forth herein.

53. At all times relevant Plaintiff suffered from a hurt ankle which substantially interfered with major life activities such as standing, walking, moving, twisting and turning and is a disability under the ADA and PWDCRA, which Defendants perceived or regarded as a disability and which was not transitory or minor.

54. Pursuant to the ADA and the PWDCRA, Plaintiff was guaranteed the right to be free from discriminatory treatment and/or discharge from her employment by her employers and/or supervisors based upon her disabilities.

55. At all times relevant Plaintiff was able to perform the essential functions of her job with or without reasonable accommodations.

56. Plaintiff's disability was a factor in Defendants' employment decisions.

57. Defendants are employers within the meaning of the ADA and the PWDCRA.

58. At all times relevant Plaintiff was subjected to an offensive, hostile and intimidating work place.

59. Plaintiff has been subjected to discriminatory treatment based upon her disability, hrt perceived or regarded disability, by Defendants, their employees and agents to the point where her status as an employee was detrimentally affected and she was terminated.

60. Plaintiff is entitled to exemplary, compensatory, and punitive damages pursuant to the ADA and PWDCRA as a result of each and every violation of these acts, including costs and reasonable attorney's fees.

61. Defendants and their agents, employees and representatives, breached and violated their duty to Plaintiff by reason of the following acts and/or omissions:

a. Failing to screen and place in supervisory positions, persons who would be capable of being competent and law-abiding supervisors, and with particular reference to enforcing laws against discrimination in the workplace;

b. Failing to provide Plaintiff reasonable accommodations;

9

c. Failing to properly educate and train its employees and supervisors, particularly with reference to the unlawfulness of discrimination in the workplace;

d. Overly scrutinizing Plaintiff's work and falsely accusing her of issues as a pretext to wrongfully terminate him.

e. Failing to properly warn or advise its employees and supervising personnel to refrain from discriminating against employees; and

f. Taking adverse employment against Plaintiff due to her disability.

62.   As a direct and proximate result of the actions of Defendants, Plaintiff was the subject of discriminatory conduct on the part of Defendants, and their agents and employees.

63.   Because of the unlawful conduct of Defendants, and their agents and employees, and as a direct and proximate cause of such conduct, Plaintiff has suffered damages including embarrassment, outrage, mental anguish and anxiety, emotional distress, loss of self-esteem, loss of earnings and other employment benefits.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against Defendant in an amount in excess of $75,000.00, plus punitive/exemplary damages, together with costs, interest, attorney fees and any other relief this Honorable Court deems appropriate.

Respectfully submitted,

**BATEY LAW FIRM, P.L.L.C.**

By: /s/ Scott P. Batey
    SCOTT P. BATEY (P54711)
    Attorney for Plaintiff
    30200 Telegraph Road, Suite 400
    Bingham Farms, MI 48025
    (248) 540-6800-telephone
    (248) 940-5848-fax
    sbatey@bateylaw.com

Dated:  July 8, 2026

## DEMAND FOR JURY TRIAL

NOW COMES, Plaintiff, Lisa Aiken, by and through her attorneys, Scott P. Batey and the Batey Law Firm, PLLC, and hereby demands a trial by jury on all issues allowed by law.

Respectfully submitted,

**BATEY LAW FIRM, PLLC**

By: /s/ Scott P. Batey
    SCOTT P. BATEY (P54711)
    Attorney for Plaintiff
    30200 Telegraph Road, Suite 400
    Bingham Farms, Michigan 48025
    (248) 540-6800
    sbatey@bateylaw.com

Dated:  July 8, 2026

11